IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEVIN KIRKMAN,

    PLAINTIFF,

v.                                              CASE NO.:

BRANDSAFWAY SOLUTIONS, LLC,

    DEFENDANT.
_____/

## COMPLAINT

Plaintiff, Kevin Kirkman, (hereinafter referred to as the "Plaintiff" or "Kirkman"), by and through his undersigned attorney, sues the Defendant, BrandSafWay Solutions, and LLC (hereinafter referred to as the "Defendant" or "BrandSafWay", and submits his Complaint which alleges the following:

## INTRODUCTION

1. Plaintiff brings this action for discrimination and interference in violation of his federally protected rights under the Family Medical Leave Act, 29 U.S.C.S. §§ 2601; 2611-2654; and Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12111-12117, 12203; and the Florida Workers' Compensation Retaliation Statute - § 440.205, Florida Statutes.

1

## JURISDICTION AND VENUE

2. The jurisdiction of the Court over this controversy is invoked pursuant to 29 U.S.C. § 2617(a)(2) and 42 U.S.C. §§ 12111-12117, 12203.

3. Defendant is considered an employer within the terms and conditions of the 29 USC §§ 2611 et seq. ("FMLA"), as Defendant was both engaged in commerce or in an industry or activity affecting commerce and employed more than fifty (50) employees for each working day during each of twenty (20) or more calendar weeks in each calendar year relevant hereto within a seventy-five (75) mile radius of Plaintiff's Pace, Florida worksite.

4. Plaintiff worked for Defendant from March 22, 2016, until March 4, 2021. Plaintiff is considered an "eligible employee" for purposes of the FMLA as he has been employed: (1) for at least 12 months by Defendant, and (2) for at least 1,250 hours of service with Defendant in the previous 12-month period.

5. The FMLA does not contain an exhaustion requirement and Plaintiff is not required to exhaust administrative remedies before bringing suit.

3. Declaratory, injunctive, and equitable relief is sought pursuant to 28 U. S. C. §§ 2201, 2202 and 42 U.S.C. § 2000e-5(g).

4. Costs and attorney's fees are sought pursuant to 42 U.S.C. §2000e-5(k), Fed. R. Civ. P. 54 and other Florida Statutes as set forth herein.

5. This action lies in the Northern District of Florida, Pensacola Division, pursuant to 29 U.S.C. § 1391(b), because the action arose in this judicial district, and pursuant to 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices were committed in this judicial district.

6. All conditions precedent and administrative remedies have been exhausted and jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f). Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR" No.: 202129803) and the United States Equal Employment Opportunity Commission ("EEOC" No.: 15D202100623) on June 11, 2021. On Dec 10, 2021, Plaintiff received Notice of Determination from FCHR pursuant to Fla. Stat. § 760.11(3). Plaintiff thereafter requested his ninety (90) day Notice of Right to Sue letter from the EEOC which was received after May 5, 2022.

## PARTIES

7. Plaintiff is a Caucasian male and a citizen of the State of Florida, Escambia County and who resides in Pensacola, Florida.

6. Defendant, BrandSafWay Solutions, LLC, is a private for-profit business that is licensed to do and does business in Florida, Santa Rosa County.

## GENERAL FACTS

8. Plaintiff is a 46 year old Caucasian male.

9. Plaintiff was employed by Defendant as an industrial insulator-lead metal mechanic from March 22, 2016, until March 4, 2021.

10. During his employment with Defendant, he performed the duties and responsibilities of his position in a satisfactory manner and was not the subject of any disciplinary issues.

11. On December 28, 2020, Plaintiff injured his shoulder while in the course and scope of his employment at Defendant's Pace, Florida location.

12. Immediately following his injury, Plaintiff reported it to his site manager, Chris Cool.

13. On December 29, 2020, Plaintiff was driven to the Occupational Health Clinic located in Mobile, Alabama by Mr. Chris Cook.

14. The Occupational Health Center, located in Mobile, Alabama, is over seventy (70) miles and almost an hour and half drive from Pace, Florida and is used almost exclusively by Defendant to treat its employees injured on the job.

15. The Occupational Health Center doctor, seen by Plaintiff, said nothing was wrong with him and released him to full duty even though Plaintiff was still in pain and could not move his shoulder.

16. Plaintiff was still in a lot of pain and could barely move his shoulder, but because the Occupational Health Center doctor, that Defendant used, released Plaintiff to full duty, Defendant required Plaintiff to work and do the job he was

hired to do under threat of termination.

17. After continuing to work in extreme pain without any accommodation and under the constant threat of termination, Plaintiff eventually returned to the Occupational Health Center to have an MRI, which showed a torn rotator cuff, but again, Defendant's Occupational Health Center doctor said Plaintiff could go back to work.

18. Defendant continued to threaten Plaintiff with termination if he did not do his job.

19. Defendant refused to provide Plaintiff any type of accommodation as Defendant's Occupational Health Center doctor said Plaintiff could work.

20. On February 15, 2021 the Defendant's Occupational Health Center stopped treating Plaintiff for his work related injuries, as it released him to return to regular duty as tolerated.

21. Not long after Plaintiff's treatment was terminated at the Occupational Health Center, he received a letter from Liberty Mutual Insurance Company informing him that his workman's compensation claim was being denied.

22. On March 4, 2021, Defendant's Regional Manager, Jeremy Noel, took Plaintiff's release from Occupational Health Center doctor's care to mean that Plaintiff was healed and ready to perform insulation work.

23. Mr. Noel thereafter gave Plaintiff an ultimatum; Plaintiff could return

to regular duty and perform the duties that he was hired to perform (industrial insulation), or Plaintiff was going to be terminated for refusal to work.

24. When Plaintiff said he was still injured and could not perform his insulation duties without help or an accommodation, Mr. Noel stated, there has been a team of doctors that said you are able to go back to work; Mr. Noel then fired Plaintiff for refusal to work.

25. After having to file a claim with the office of workers' compensation and having an IME ordered by the court, Plaintiff was diagnosed by the IME doctor with a partial left tear of the supraspinatus tendon and secondary adhesive capsulitis or frozen shoulder.

26. Defendant knew when it drove Plaintiff over seventy (70) miles to Mobile, Alabama for treatment at the Occupational Health Center, that it would say that Plaintiff was not injured and return him to work without restricts.

27. Defendant further knew that with Plaintiff's injuries, he needed an accommodation, but Defendant continued to threaten and intimidate Plaintiff to work while injured or be terminated.

FIRST CAUSE OF ACTION
*DISABILITY DISCRIMINATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

28. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 6 through 27 of this complaint with the same force and effect as if set

forth herein.

29. The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

30. At all times material hereto, Plaintiff was an employee of Defendant and Defendant was an employer within the meaning of Americans with Disabilities Act, (ADA), as the Defendant employed more than fifteen (15) employees.

31. As such, Defendant is prohibited from discriminating against any qualified individual with a disability.

32. Plaintiff is, and was at all time pertinent hereto, a qualified individual with a disability.

33. Plaintiff suffered from a partial left tear of the supraspinatus tendon and secondary adhesive capsulitis or frozen shoulder.

34. Plaintiff's tear of the supraspinatus tendon limited his mobility and ability to conduct daily life activities such as self-care or lifting.

35. Plaintiff's tear of the supraspinatus tendon limiting his ability to lead a normal life, and sustain a sense of well-being.

36. Plaintiff's shoulder injury, tear of the supraspinatus tendon, is an

impairment and disability within the meaning of the ADA as it substantially limits Plaintiff's ability to perform major life activities as compared to most people in the general population.

37. Plaintiff's shoulder injury substantially limited his ability to perform the major life functions of self-care, working, lifting and working.

38. Upon learning of Plaintiff's shoulder injury and requested accommodations, Defendant was under an obligation to engage in a good faith interactive process with Plaintiff to determine the reasonableness of his requested accommodation.

39. Defendant failed to engage in a good faith dialogue with Plaintiff in an attempt to "identify the precise limitations" caused by Plaintiff's shoulder injury, nor did Defendant "explore potential accommodations" to overcome those limitations.

40. Defendant's termination and disqualification of Plaintiff's employment on March 4, 2021, just sixty-five (65) days after his injury, on the basis of his disability and Defendant's failure to make a good faith individual assessment to determine whether Plaintiff could be employed or whether reasonable accommodations would enable him to be employed by Defendant, violated the ADA.

41. Any possible assertion that there was a viable business justification

for the treatment of Plaintiff that lead to his termination is entirely *pretextual* for Defendant's retaliation and discrimination against his for engaging in a protective activity and for any actual or perceived disability.

42. The adverse personnel action, the termination of Plaintiff's employment, clearly violated his statutory protected rights and constituted a prohibited employment practice, contrary to the public policy of the under the Americans with Disabilities Act, (ADA).

43. As a result of the Defendant's violations of the ADA, Plaintiff has been substantially damaged, in that he has lost wages, associated job benefits; and in addition, he has sustained compensatory damages, based upon mental, psychological and emotional distress, and anxiety from difficult economic circumstances, resulting from his unlawful discharge.

SECOND CAUSE OF ACTION
*DISABILITY RETALIATION*
*AMERICANS WITH DISABILITIES ACT, (ADA)*

44. Plaintiff repeats and re-alleges each allegation contained in paragraphs 6 through 27 of this complaint with the same force and effect as if set forth herein.

45. The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from retaliating against qualified individuals for objecting to discriminatory acts or for requesting an accommodation.

46. Defendant terminated and disqualified Plaintiff from his employment

in retaliation for questioning and objecting to Defendant's failure to discuss his accommodation requests and for requesting an accommodation.

47. Defendant acknowledged and regarded Plaintiff as disabled (perceived or otherwise) and as having an impairment.

48. When Plaintiff provided Defendant with sufficient information regarding his tear of the supraspinatus left shoulder tendon and requested a reasonable good faith accommodation, Plaintiff's requests became and were considered a statutorily protected activity under the ADA.

49. Plaintiff questioned and objected to Defendant's failure to reasonably discuss his accommodation requests.

50. Defendant's March 4, 2021 termination and disqualification of Plaintiff's employment, was in retaliation for his seeking a good faith accommodation, his objecting to Defendant's discriminatory practices regarding his disability and requested accommodation, constituted a statutory protected activity and a prohibited employment practice, contrary to the public policy of and in violation of the ADA.

51. Any possible assertion that there was a viable business justification for the treatment of Plaintiff that lead to his termination is entirely *pretextual* for Defendant's retaliation against him for engaging in the statutory protective activity of requesting a reasonable accommodation.

## THIRD CAUSE OF ACTION
(FMLA INTERFERENCE)

52. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 2 through 5 and 7 through 27 of this complaint with the same force and effect as if set forth herein.

53. "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

54. Plaintiff was an employee entitled to a benefit under the FMLA and Defendant denied him that benefit.

55. At the time of Plaintiff's termination, Defendant had more than sufficient knowledge that Plaintiff was entitled to FMLA leave.

56. Defendant had more than sufficient knowledge that his tear of the left supraspinatus tendon was serious health condition and a FMLA-qualifying medical condition.

57. Defendant knew of Plaintiff's qualifying medical condition and refused to discuss any type of FMLA leave.

58. Defendant should have notified Plaintiff of his eligibility to take FMLA leave for his shoulder within five (5) business days.

59. The FMLA required Defendant to give Plaintiff written notice

detailing his specific expectations and obligations related to the FMLA and explaining any consequences of his failure to meet these obligations.

60. Defendant never provided Plaintiff with any type of written notice regarding his FMLA rights related to his tear of the left supraspinatus tendon, thus interfering with and denying his substantive rights under the FMLA.

61. Defendant terminated Plaintiff for poor attendance and absences which were related to his FMLA qualifying shoulder injury.

62. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

63. Plaintiff has retained the undersigned attorney to assist him, in the prosecution of this action, and he is obligated to pay said attorney a reasonable fee for his professional services.

### *FOURTH CAUSE OF ACTION*
(*FLA. STAT. § 440.205 Florida Workers' Compensation Retaliation Claim*)

64. Plaintiff repeats and re-alleges each allegation contained in paragraphs 7 through 27 of this complaint with the same force and effect as if set forth herein.

65. Defendant's conduct and commissions constitutes intentional discrimination and unlawful employment practices based upon Workers' Compensation Law. FLA. STAT. § 440.205.

66. Florida's Workers' Compensation Law ("§ 440.205") sets forth that: No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.

67. Plaintiff made a valid claim for compensation.

68. Plaintiff engaged in protected activity when he reported to Defendant and thereafter attempted to claim compensation for a work-related injury.

69. In retaliation, Defendant proceeded to harass, threaten to discharge, intimidate, coerce and ultimately did discharge Plaintiff for engaging in the protected act of notifying and requesting workers compensation benefits.

70. Defendant's harassing, intimidating threating and coercive text messages were in direct response to Plaintiff having reported his work-related injury and having requested workers' compensation benefits as a result.

71. Defendant's action were solely retaliatory in nature and any stated legitimate business reasons for Plaintiff's termination are pretextual as Defendant harassed, intimidated, coerced, threaten to discharge, and ultimately did discharge Plaintiff for engaging in the protected act of notifying and requesting workers' compensation benefits.

72. Defendant's actions were with malice and with reckless disregard for Plaintiff's statutorily protected rights.

73. Defendant terminated Plaintiff on March 4, 2021, sixty-five (65) days after Plaintiff's workplace injury and request for workers' compensation benefits.

74. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment:

a) Declaring the acts and practices complained of herein are violation of the FMLA; ADA and Workers' Compensation Law. FLA. STAT. § 440.205;

b) Enjoining and permanently restraining those violations of the FMLA; ADA Workers' Compensation Law. FLA. STAT. § 440.205;

c) Directing the Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practice are eliminated and do not continue to affect Plaintiff's employment opportunities;

d) Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to the ADA; FMLA and Workers' Compensation Law. FLA. STAT. § 440.205;

e) Directing Defendant to place Plaintiff in the position he would

have occupied but for Defendant's discriminatory treatment of him and make him whole for all earnings he would have received but for Defendant's discriminatory treatment, statutory damages for lost wages, benefits, and other compensation, plus interest thereon at the statutory rate, pursuant to the FMLA and ADA; FLA. STAT. § 440.205;

f) Awarding compensatory damages in the amount of the above-requested award, pursuant to the ADA and FLA. STAT. § 440.205;

g) Plaintiff further seeks declaratory, injunctive, and equitable relief pursuant to the ADA; FMLA and FLA. STAT. § 440.205;

h) Awarding liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(iii);

i) Awarding Plaintiff attorney's fees, expert witness fees, and costs of this action, pursuant to the ADA, FMLA and Fed. R. Civ. P. 54 and such other relief as this Court may deem just and proper;

j) Granting such other and further relief, equitable or otherwise, as the Court deems just and proper in the premises.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: July 26, 2022.

By: */s/ Clayton M. Connors*
CLAYTON M. CONNORS
Florida Bar No.: 0095553
Email: cmc@westconlaw.com
**THE LAW OFFICES OF**
**CLAYTON M. CONNORS, PLLC.**
4400 Bayou Blvd., Suite 32A
Pensacola, Florida 32503
Tel: (850) 473-0401
Fax: (850) 473-1388
Attorney for Plaintiff